428

Pennsbury School District, Petitioner *v.* Commonwealth of Pennsylvania, Department of Education et al., Respondents.

School District of Pittsburgh, Petitioner *v.* Commonwealth of Pennsylvania, Department of Education, Respondent.

Pennsbury School District *v.* Commonwealth of Pennsylvania, Department of Education et al. Elizabeth M. Wilson, Petitioner.

Pennsbury School District, Petitioner *v.* Commonwealth of Pennsylvania, Department of Education et al., Respondents.

Centennial School District, Petitioner *v.* Commonwealth of Pennsylvania, Department of Education et al., Respondents.

Centennial School District, Petitioner *v.* Commonwealth of Pennsylvania, Department of Education, Respondent.

Argued September 11, 1979, before President Judge BOWMAN and Judges WILKINSON, JR., ROGERS, BLATT, DISALLE, CRAIG and MACPHAIL. Judges CRUMLISH, JR. and MENCER did not participate.

*Paul L. Stevens,* with him *Curtin & Heefner,* for petitioners, Pennsbury School District and Elizabeth M. Wilson.

*John Philip Diefenderfer,* with him *Stuckert, Yates and Krewson,* for petitioner, Board of School Directors of the Centennial School District.

*Grace E. D'Alo,* Assistant Attorney General, with her *Patricia A. Donovan,* Deputy Attorney General, Chief Counsel, for respondents.

*Michael I. Levin,* with him *William Fearen,* and *Cleckner & Fearen,* for amicus curiae, Pennsylvania School Boards Association.

OPINION BY PRESIDENT JUDGE BOWMAN, November 28, 1979:

The principal question before us is whether the Pennsylvania Department of Education (PDE) is mandated to reduce instructional subsidies to schools which provide less than 180 days of instruction. It comes to us through the consolidation of the appeals of the Pittsburgh School District (Pittsburgh) and the Centennial School District (Centennial) from orders by the Secretary of Education directing a reduction of their subsidies and two actions addressed to this Court's original jurisdiction by the Pennsbury School District (Pennsbury) and Centennial, requesting that the PDE be ordered to reimburse the district for the amount by which the subsidy was reduced.

The question first arose in 1976 when Pittsburgh received a subsidy from PDE which had been reduced as a result of Pittsburgh's failure to provide 180 days of instruction because of a teachers' strike. Pitts-

burgh protested this reduction and was granted an administrative proceeding before a hearing examiner appointed by the PDE. The examiner issued an opinion, which was subsequently adopted by the Secretary of Education (Secretary), upholding the PDE's subsidy reduction. Exceptions were filed by Pittsburgh which were deemed to be an application for reconsideration and, as such, granted. Following reconsideration, the Secretary issued a final order affirming the PDE's actions. Pittsburgh's appeal to this Court followed.

Similarly, Centennial protested the PDE's reduction of its 1977 subsidy and was granted an administrative proceeding before the same hearing examiner who heard Pittsburgh's appeal. Again, the Secretary considered the district's appeal and dismissed it. From the Secretary's order, Centennial appealed to this Court. Centennial also filed a petition for review pursuant to this Court's original jurisdiction.

Pursuing a different course in challenging a reduction in its 1978 subsidy, Pennsbury chose to file a petition for review in the nature of mandamus, or in the alternative, an appeal from the subsidy computation. Subsequently, an administrative proceeding similar to those arranged for Pittsburgh and Centennial was granted to Pennsbury, and the mandamus action was stayed pending completion of the administrative proceeding. As in the other cases, the Secretary upheld PDE's subsidy reduction. Consequently the district appealed the Secretary's determination to this Court, and also contained the pursuit of its action in mandamus.

During the course of Pennsbury's appeal, Elizabeth M. Wilson, a resident taxpayer and the mother of a Pennsbury student, filed a petition to intervene which was dismissed by the Secretary. Mrs. Wilson appealed from this order.

On March 23, 1979, this Court consolidated all of the above actions, *i.e.*, the appeals of Pittsburgh, Centennial, Pennsbury and Mrs. Wilson, and the actions in mandamus of Pennsbury and Centennial. Since that time, Pennsbury has elected to proceed solely on the basis of its action in mandamus which is presently before us on cross motions for summary judgment, and Centennial has pursued only its appellate action. In addition, we here determine that the Secretary properly dismissed Mrs. Wilson's petition to intervene for lack of standing, *see Wm. Penn Parking Garage, Inc. v. City of Pittsburgh,* 464 Pa. 168, 346 A.2d 269 (1975). Consequently, we need further consider only the validity of the Secretary's orders dismissing Pittsburgh's and Centennial's appeals of the reduction in their subsidies, and the propriety of Pennsbury's action in mandamus to force payment of its full 1978 subsidy.

In dismissing the districts' appeals, the Secretary determined that Section 2502 of the Public School Code of 1949[1] (Code), 24 P.S. §25-2502, providing for subsidies to be paid "on account of instruction," should be read together with Section 1501 of the Code, 24 P.S. §15-1501, as a legislative mandate that subsidies be paid according to actual days of instruction offered. On this basis, the Secretary found that PDE was required to reduce the subsidies of those school districts providing less than 180 days of instruction proportionately to the reduction in days of instruction. However, the clear words of the statute, as well as the Legislature's statement of objective[2] in passing Section 2502 of the Act, indicate that the subsidy provision is designed to reimburse school districts for actual expenditures to assure that relatively equal minimum expenditures are made for the education of each child

---

[1] Act of March 10, 1949, P.L. 30, *as amended.*

[2] Section 2502(g) of the Code, 24 P.S. §25-2502(g).

in the Commonwealth. No mention is made in the subsidy provisions of an intent to enforce the 180 day instruction provision. Consequently, we find that the administrative adjudication of the Secretary is "not in accordance with law" as required under Section 704 of the Administrative Agency Law, 2 Pa. C.S. §704.

Turning to the words of the statute, we note that Sections 2501 *et seq.* of the Code are replete with references to "actual instruction expense," "reimbursement," and "reimbursement cost." Despite these unambiguous terms, the PDE contends that we should read the words "days of instruction" into the statute in order to promote the legislative intent to provide Commonwealth children with 180 days of instruction, as expressed in Section 1501 of the Code. Although we recognize that through Section 1501 of the Code, the Legislature intends that 180 days of instruction be provided by school districts, we find no indication that it intended that the subsidy provision should be used as a vehicle to promote that objective. To the contrary, the words of the statute clearly refer to *reimbursement* for instruction. Pittsburgh and Centennial have provided instruction to the children in their district and have incurred certain expenses as a result. They have consequently asked to be reimbursed for these expenses, and the clear words of the statute indicate that they should have been so reimbursed. "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." Section 1921(b) of the Statutory Construction Act of 1972 (Statutory Construction Act), 1 Pa. C.S. §1921(b). We cannot allow the PDE to pursue what it believes to be the spirit of the Code through a reduction in subsidies based on a misinterpretation of a clear legislative mandate.

The PDE argues that our interpretation of the statute could result in payment of large subsidies to schools which provide very little instruction. It uses the example that a school district that provided 100 days of instruction would receive the same subsidy as a district that provided 177 days, and refers to this alleged result as "absurd." The fallacy in the PDE's reasoning is its failure to account for reductions in costs that would accompany drastic reductions in the amount of instruction a school district offered. Under the reimbursement formula provided in the Code, a school district is only subsidized for actual instructional expenses. It is not a matter, as PDE suggests, of reimbursement for services never rendered; if services are not rendered, the school district will incur no expenses for which it will be reimbursed. We see no absurdity in this result.

PDE has further deviated from the Legislative mandate of the Code by interpreting the term "average" to mean "per 180 days" in some instances, and "average" in others. On the one hand, in computing the aid ratio as provided for in Section 2501(14) of the Code, 24 P.S. §25-2501(14), PDE interprets "average" to mean mathematical average as the term is understood in ordinary usage, and computes the average daily membership by adding the number of student members in the school district during each day of instruction (sum) and dividing by the number of days of instruction. On the other hand, in its computation of each school district's subsidy, PDE interprets average to mean "per 180 days" and computes average daily membership by dividing the sum by 180, rather than by the actual number of days of instruction, when less than 180 days of instruction are provided. As a result, within the same formula, average daily membership is given two different values. Clearly, the Code provides for the computation of the *average*

daily membership—not the actual average daily membership in some circumstances and the daily membership per 180 days in others. Although Section 2501(3) of the Code, 24 P.S. §25-2501(3), allows the "average daily membership" to be computed "in accordance with the rules of procedure as established by the Superintendent of Public Instruction," we do not believe that the Legislature intended to grant to the Superintendent (now Secretary) the authority to establish rules which deviate from the clear expression of legislative intent or to create wholly new terms under the guise of an interpretation of a set statutory term. Rather, Section 2501(3) apparently authorizes the Secretary to determine which students should be included in daily membership. Once that determination is made, the Code clearly provides that the *average* daily membership is to be computed. Under Section 1903(a) of the Statutory Construction Act of 1972 "[w]ords and phrases shall be construed according to . . . their common and approved usage. . . ." Consequently, we believe that the only appropriate computation of average daily membership must be based upon a true mathematical average, as done by PDE in computing the aid ratio. *See also*: Section 2509 of the Code, 24 P.S. §25-2509 (legislative provision for computation of "average daily membership for pupils in speech correction classes" based on traditional average computations).

A further study of the Code discloses a clear legislative statement of intent that forfeiture of reimbursement is to take place in given instances or that authority is afforded to PDE to reduce or withhold subsidy funds in others. In Section 2518 of the Code, 24 P.S. §25-2518, the Legislature specifically provided for forfeiture of reimbursement for employing certain teachers, and in Section 2519 of the Code, 24 P.S. §25-2519, it provided for the withholding of subsidies to school

districts which do not pay minimum salaries. Similarly, in Sections 2508.2, 2509, 2509.1 and 2552, 24 P.S. §§25-2508.2, 25-2509, 25-2509.1, 25-2552, the Legislature authorized the reduction or withholding of subsidy funds. Contrasted with these specific mandates or authorizations, the Code is silent with respect to the reduction of subsidies because of a failure to provide 180 days of instruction. Certainly, if the Legislature had intended to mandate or to authorize additional subsidy reductions, it would have done so through provisions similar to those in the above-cited sections. Since it has chosen not to do so, we cannot allow PDE to create unauthorized subsidy reductions through a manipulation of the subsidy formula.

Finally with regard to the legislative intent, we note that the stated objective of Section 2502(g) of the Code is "to provide to each child educated in the schools of Pennsylvania, a minimum educational input that is within two hundred dollars ($200) of the median actual instruction expense per WADM. . . ." Apparently the Legislature is more concerned with the dollar value of the education provided to each child than with the number of days used to provide an education of that value. Consequently, we cannot allow PDE to substitute its objectives for those of the Legislature and must accordingly reverse the Secretary's order upholding the PDE's subsidy reductions. We cannot, however, grant the relief requested by Pittsburgh and Centennial (full payment of their subsidies) since an appeal from an order merely determines the validity and content of the order. *Commonwealth v. Borough of Reynoldsville*, 39 Pa. Commonwealth Ct. 318, 395 A.2d 333 (1978). Although we have found that the Secretary's orders are "not in accordance with law," 2 Pa. C.S. §704, we shall not award damages to the districts, but will order for the future recomputa-

tion of the formula consistent with this opinion. *See* Section 706 of the Judicial Code, 42 Pa. C.S. §706.

Having determined that PDE's reduction of subsidies is improper, we must next decide whether the action in mandamus by Pennsbury will lie to force PDE to pay full subsidies for prior subsidy years. Mandamus will lie to compel public officials to perform their duties in accordance with the law when those duties are ministerial in character and not discretionary. PDE has the ministerial duty of making proper subsidy computations in accordance with the directives of the Code. Since its method of computing subsidies results in a failure to pay the amount required by the formula, it is a proper subject for an action in mandamus. *Rose Tree Media School District v. Department of Public Instruction,* 431 Pa. 233, 244 A.2d 754 (1968). However, in deciding whether to grant the relief requested, we feel compelled to consider the fact that PDE has already distributed the funds available to it for the subsidies in question. In essence, no money is available to pay the requested relief. As the Supreme Court stated in *Commonwealth ex rel. McLaughlin v. Erie County,* 375 Pa. 344, 350, 100 A.2d 601, 604 (1953):

> [M]andamus will not issue, as a rule, where it is apparent that the writ will be futile or ineffectual by reason of the inability of the respondent to comply therewith. Although want of funds . . . may not always prevent such issuance, the court in its discretion may refuse the remedy if it is satisfied that the respondent has not the necessary money or the means of procuring it to comply with the mandate.

*See also Commonwealth ex rel. Alessandroni v. Borough of Confluence,* 427 Pa. 540, 234 A.2d 852 (1967); *Board of Commissioners of Potter County v. Turner,* 33 Pa. Commonwealth Ct. 639, 382 A.2d 1248 (1978).

We are so satisfied, and accordingly deny mandamus as to any past subsidy payments. Although in the future PDE must calculate instructional subsidies in accordance with this opinion, we will not place it in the impossible position of having to make restitution out of nonexistent funds.

## Order

Now, November 28, 1979, it is hereby ordered as follows:

1. To No. 284 C.D. 1979, the order of the Secretary of Education is affirmed.

2. To No. 206 C.D. 1979 and No. 494 C.D. 1979, the order of the Secretary of Education is reversed. All future final subsidy payments shall be calculated and paid consistent with this Opinion.

3. To No. 708 C.D. 1978, the Department of Education shall calculate instructional subsidies incident to all future final subsidy payments consistent with this opinion. All other reliefs sought are denied.

4. To No. 285 C.D. 1979 and No. 1631 C.D. 1978, the petitions not having been pursued are dismissed.